UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| STEPHANIE CATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:13-cv-100 |
| | ) | Senior Judge Haynes/Bryant |
| SHERIFF ENOCH GEORGE, in his | ) | **Jury Demand** |
| individual and official | ) | |
| capacity, | ) | |
| | ) | |
| Defendant. | ) | |

**TO: The Honorable William J. Haynes, Jr., Senior District Judge**

## REPORT AND RECOMMENDATION

Defendant Sheriff Enoch George has filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket Entry No. 55). Plaintiff has not responded in opposition.

This motion has been referred to the undersigned Magistrate Judge for report and recommendation ("R&R"). (Docket Entry No. 38).

For the reasons stated below, the undersigned Magistrate Judge **RECOMMENDS** that the defendant's motion for summary judgment be **GRANTED;** that the complaint be **DISMISSED WITH PREJUDICE;** and that all other pending motions (Docket Entries No. 44 and No. 50) be **TERMINATED AS MOOT.**

## Statement of the Case

While confined at Maury County Jail ("Jail") in Columbia, Tennessee, the plaintiff, proceeding pro se and in forma pauperis, filed her complaint (Docket Entry No. 1) on August 30, 2013, in which she alleges Eighth Amendment violations pursuant to 42 U.S.C. § 1983.

Plaintiff makes several separate claims regarding: (1) medical care, (2) inadequate food, (3) inadequate and unsanitary housing, (4) lack of recreation, (5) sleeping on the floor, (6) lack of a law library, (7) inadequate hygiene, (8) exposure to raw sewage, and (9) sexual discrimination.

In plaintiff's first claim, she alleges that inmates do not get sufficient medical attention. (Docket Entry No. 1, p. 5). While plaintiff was at the Jail, she needed surgery to replace the battery in the TENS unit in her back that helps regulate her bladder. (Plaintiff's Deposition, Docket Entry No. 56-1, pp. 34-36). On November 11, 2013, plaintiff received the necessary surgery. (Id. at p. 36). The discharge instructions noted that plaintiff was to schedule a follow-up appointment three to four weeks after the November 11, 2013 surgery. (Id. at p. 40). Plaintiff's claim focuses on the fact that she was not taken to her follow-up appointment three to four weeks after her surgery, despite her request. (Id.) The procedure for receiving medical care at the Jail begins with the submission of a medical request by the inmate after which the medical staff decides what care the inmate needs. (Id. at pp. 37-38). Following the surgery, plaintiff submitted the requisite medical request to have her stitches taken out but medical staff never saw her, resulting in plaintiff taking them out herself. (Id. at p. 41). Plaintiff never spoke or wrote to defendant George about her medical request to be seen. (Id.) Plaintiff admits that defendant did not deny her the opportunity to get medical care. (Id. at p. 42). In fact, it

is clear that the Jail made efforts to get the medical staff to see plaintiff for her follow-up appointment. (Id. at p. 41). Furthermore, plaintiff states that her surgery site never became infected and her condition never worsened as a result of not being seen by the medical staff. (Id. at p. 43). On December 18, 2013, plaintiff was transferred from the Jail to Tennessee Prison for Women ("TPW") where she currently resides. (Id. at p. 40). Upon her arrival, TPW medical staff examined the plaintiff and did not find any medical issues that required attention. (Id. at p. 43).

Plaintiff further claims that the jail provides watered-down food. (Docket Entry No. 1, p.5). Plaintiff wrote one grievance detailing this complaint in which she stated that the "food was full of water, there wasn't no sauce, the salad had no dressing, the noodles was full of water. There was pretty much nothing on the tray" (Docket Entry No. 56-1, pp. 29-30). Plaintiff was never denied food and was not injured by the food at the Jail. (Id. at pp. 31-32). Furthermore, plaintiff has no knowledge that defendant was personally involved in the food being watered-down. (Id. at p. 32).

Thirdly, plaintiff claims that there is unsanitary black mold on the mats, air vents are rusted over and moldy, showers are leaky, clogged up and moldy, the pod is infested with spiders and roaches, and uniforms don't get washed daily. (Docket Entry No. 1, p. 5). Plaintiff asserts that these conditions are a health threat; however, she admits that she was never actually injured by any of these conditions. (Docket Entry No. 56-1, p. 19). With regards to the mold

3

complaints, plaintiff mentions some sinus problems but clarifies that the doctor never told her these sinus issues were related to the mold. (Id.) Plaintiff also mentions that she got a couple spider bites but never sought medical attention for them because they never became infected. (Id. at p. 20). Plaintiff states that the uniforms wouldn't get washed daily because there was a shortage of supply for about a month and a half during which some inmates had to put on dirty uniforms after taking a shower. (Id. at pp. 22-23). In sum, plaintiff states that these conditions were just inconvenient for her. (Id. at pp. 19, 23-25). Plaintiff, moreover, admits that she never notified defendant George about any of these issues and that to her knowledge, defendant was never in any way personally involved in keeping these conditions unsanitary. (Id. at p. 21). Instead, plaintiff claims defendant is responsible because he was in charge of the Jail. (Id. at pp. 21-22).

Next, plaintiff claims that inmates are not given adequate time outside. (Docket Entry No. 1, p. 5). Plaintiff states that she was denied her recreation time whenever "they were short-staffed, they said it was too hot, too cold, didn't want to mess with it." (Docket Entry No. 56-1, pp. 25-26). Plaintiff further alleges that "we got to see outside two hours a week." (Id. at p. 26). Plaintiff states that she was never denied an opportunity to do any type of physical exercise in her pod and in fact, plaintiff states that she did jumping jacks. (Id.) She explains that "we didn't have no weights or any of that. I mean, we could walk around the pod all we wanted to." (Id.)

Plaintiff was not harmed by any lack of recreation, just sore, and it took her a while for her eyes to adjust to the sunlight. (Id. at pp. 26-27). Plaintiff never sought medical attention for anything related to exercise or lack of recreation and she is not aware that defendant was ever personally involved in keeping her from recreation. (Id.) Plaintiff did write one grievance regarding recreation time in which she requested to go out later in the afternoon instead of in the morning. (Id. at p. 28). Lieutenant Wagonschutz responded to plaintiff's grievance and said they would start rotating times to get inmates out for recreation at later times in the day. (Id. at p. 29).

Plaintiff further claims that she had to sleep on the floor with only one mat for the first four months that she was at the Jail. (Id. at p. 24). Plaintiff states that she was never injured by sleeping on the floor but that the medical staff would not give her a second mat to make it any more comfortable because they didn't have enough mats. (Id.) Further, plaintiff never sought any medical treatment from sleeping on the floor. (Id.) Plaintiff admits that defendant did not do anything personally to keep her from having a second mat and that defendant was not personally involved in causing plaintiff to sleep on the floor. (Id. at p. 25).

Next, plaintiff complains that inmates didn't have access to the law library. (Id. at p. 23). Plaintiff recounts that officials told the inmates that they didn't have a law library inmates could go to so instead inmates were brought "two books with all the pages gone." (Id.) Plaintiff admits that she was never prevented from having access

to the courts or filing cases, just that the process took longer without the books. (Id.)

In her seventh claim, plaintiff states that inmates are not supplied adequate amounts of hygiene products. (Docket Entry No. 1, p. 5). Plaintiff complains of a limited number of sanitary napkins for the women and states that they did not have enough toilet paper. (Docket Entry No. 56-1, pp. 43-44). Plaintiff admits however, that she was never injured as a result of receiving inadequate amounts of hygiene products. (Id. at p. 44). Plaintiff cannot recall if she wrote a grievance about the hygiene products or not. (Id.) Plaintiff states that the only way defendant George was involved in the lack of hygiene products was to do with the budget and ordering because "everything had to [go] through [him], how much went out to this and that." (Id. at pp. 44-45).

Next, plaintiff states that the "toilets do not flush properly resulting in exposure [to] daily raw [sewage]." (Docket Entry No. 1, p. 5). Plaintiff does not allege any injury from her exposure to the raw sewage nor defendant's involvement in the matter.

Lastly, plaintiff makes claims of sexual discrimination while she was incarcerated at the Jail. (Id.) In her complaint, plaintiff states that she works in the kitchen ninety-six (96) hours a week to receive 2-for-1 Jail benefits while the males only work thirty (30) to forty (40) hours for their same 2-for-1 privileges. (Id.) In her deposition, plaintiff further states that men get the weekends off work while the females have to work seven days a week. (Docket Entry No. 56-1, p.

6

45). Plaintiff alleges several more instances of sexual discrimination including that: men got all the jobs, the men got to wear street clothes, the men could work outside the Jail, and they could receive food from their families. (Id. at pp. 45-48). Plaintiff alleges that women inmates were not afforded the same privileges.

The Jail's procedure for assigning jobs requires first that the inmate be sentenced and have no disciplinary, medical, or mental health issues that would prevent him or her from working. (Debra Wagonschutz Affidavit ("Wagonschutz Aff."), Docket Entry No. 58, ¶ 8). Once those requirements are met, the inmate is added to the job list after which the Jail Administrator fills any available job from the list. (Id.) The only distinction made throughout the job assignment process is between misdemeanor inmates and felony inmates. (Id. at ¶ 10). Misdemeanor inmates and felony inmates are not eligible for the same job placements due to the varying levels of security they require. (Id. at ¶¶ 9-10). For this reason, misdemeanor inmates are allowed to go out into the community and work without the presence of correctional officers. (Id. at ¶ 10).

Plaintiff was a felony inmate while she was incarcerated at the jail; accordingly, she was not eligible for any misdemeanor job assignments. (Id. at ¶ 11). Felons work on one of three job assignments: (1) trustee; (2) work bus; or (3) kitchen. (Id. at ¶ 12). Typically, male felons work as trustees at the Jail. (Id. at ¶ 13). There are inside and outside trustees. (Id.) At times, defendant George did allow the outside trustees to wear civilian clothes and to

7

receive food from their families; however, these activities were just occasional allowances and not guaranteed privileges. (Id.)

Furthermore, male felons working as inside trustees or on the work bus were required to wear the jail uniforms. (Id. at ¶ 14). Such inmates had access to the Jail food only. (Id.) Male felons on the work bus detail work for the Tennessee Highway Department ("THD"). (Id. at ¶ 15). This job assignment is highly labor intensive and the highway department has never expressed an interest in having women on its work crews. (Id.)

Plaintiff, as a felony inmate, worked in the kitchen during her period of incarceration at the Jail. (Docket Entry No. 1, p. 5). No male felons worked in the kitchen at the time plaintiff was incarcerated. (Wagonschutz Aff. at ¶ 8). Since then, the Jail has begun to allow male felons to work in the kitchen at separate times from the female felons. (Id. at ¶ 16). Just like the male trustees who also worked inside, kitchen workers were required to wear the Jail uniforms and only had access to the Jail food. (Id.) In accordance with Tennessee Corrections Institute Code 1400-01.17(2), male and female inmates are to be kept completely out of sight, sound, and physical contact with inmates of the opposite sex. (Id.) The primary reason for separating male and female inmates is to maintain institutional safety and order. (Id.)

The varying job assignments have different hours. (Id. at ¶ 18). For example, the kitchen job assignment requires inmates to work from 4:00 am until 6:00 or 7:00 pm, seven days a week while inside trustees

8

work from 5:00 am until 10:00 pm or later. (Id. at ¶¶ 19-20). However, each job assignment receives the same 2-for-1 privilege. (Id. at ¶ 24). In other words, for each day worked, inmates are credited two days towards their sentence. (Id.)

The Jail Administrator has no knowledge of or documentation to show that plaintiff requested a different job assignment during her incarceration. (Id. at ¶ 27). Furthermore, it is notable that working at the Jail is completely voluntary and there is no requirement that inmates apply for a job assignment.

Plaintiff seeks injunctive relief and requests: (1) to be sent to prison, (2) for the air duct system to be cleaned and replaced, and (3) that the toilets and sewage systems be fixed. (Docket Entry No. 1, p. 5). Plaintiff also seeks monetary relief of $50,000. (Id.)

Plaintiff brings claims against defendant Sheriff Enoch George in both his individual and official capacity, and states that the basis for holding defendant liable is because "he was over the jail." (Docket Entry No. 56-1, pp. 22).

### Conclusions of Law

Defendant's Motion for Summary Judgment.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the defendant moves the Court for summary judgment on the plaintiff's claims. The defendant argues that no genuine issue of material fact exists such as to preclude the Court from finding for defendant as a matter of law. Defendant seeks summary judgment on the following legal grounds: first, that defendant is entitled to summary judgment in his

9

official capacity on plaintiff's § 1983 claims because plaintiff failed to plead that an unconstitutional policy, practice, or custom caused any of the harm alleged; and second, that defendant is entitled to summary judgment in his individual capacity on plaintiff's § 1983 claim (based on violations of the Eighth Amendment) because he is immune from suit on the basis of qualified immunity.

Plaintiff has not responded to defendant's motion for summary judgment. Pursuant to Local Rule 56.01(g), plaintiff's failure to respond to defendant's statement of material facts (which relies heavily on plaintiff's deposition) indicates that the asserted facts are not disputed for purposes of summary judgment.

## Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be rendered if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Importantly, a district court cannot grant summary judgment in favor of the movant simply because the other party has not responded. F.T.C. v. E.M.A. Nationwide, Inc., 767 F.3d 611, 629-30 (6th Cir. 2014); see also Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991). The court is required to examine the movant's motion for summary judgment to ensure that he has discharged his initial burden of demonstrating the absence of any genuine issue of material fact. Id. Furthermore, while a pro se complaint is held to less stringent standards than formal pleadings drafted by lawyers, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), those liberal standards

do not apply to the consideration of substantive law and evidence once the case has reached the summary judgment phase. Johnson v. Stewart, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citing, e.g., Tucker v. Union of Needletrades, Industrial and Textile Employees, 407 F.3d 784, 788 (6th Cir. 2005)).

Analysis of Plaintiff's § 1983 Claims

Title 42, § 1983 of the United States Codes states that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Under § 1983, a claimant must show "(1) the deprivation of a right secured by the Constitution or laws of the United States and (2) the deprivation was caused by a person acting under color of state law." Street v. Corrections Corp. of America, 102 F.3d 810, 814 (6th Cir. 1996) (quoting Simescu v. Emmet County Dept. of Social Services, 942 F.2d 372, 374 (6th Cir. 1991)). Here, plaintiff alleges that the defendant deprived plaintiff of her rights under the Eighth Amendment. There is no challenge to the state actor prong.

A. Official Capacity Action

Plaintiff brings claims against defendant in his official capacity. "A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity" of which the official is an agent. United Pet Supply, Inc. v. City of Chattanooga,

Tenn., 768 F.3d 464, 483 (6th Cir. 2014) (quoting Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994)); see also Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Thus, the plaintiff's claims against defendant in his official capacity are claims against Maury County, Tennessee. It is well established that municipalities and other local governmental entities are considered "persons" to whom § 1983 applies. Monell v. Dep't of Social Services of City of New York, 436 U.S. 658, 690 (1978). However, in order to hold the governmental entity liable under § 1983, plaintiff must establish that the entity's "policy or custom" played a part in the alleged violation of federal law. Kentucky v. Graham, 473 U.S. 159, 166 (1985) (quoting Monell, supra at 694).

As pointed out by the defendant, plaintiff has neither alleged nor submitted evidence to establish an unconstitutional policy or custom of Maury County, outside of such custom as may have been established in the Maury County Jail through the actions of its ultimate administrator, defendant George. However, as discussed below, the record in this case does not support any claim to damages resulting from such a custom, including the claimed differences in treatment of male and female inmates. Therefore, plaintiff's official capacity claim cannot proceed.

B. Individual Capacity Action

Plaintiff alleges that defendant individually deprived plaintiff of her Eighth Amendment rights. Defendant's summary judgment motion raises the affirmative defense of qualified immunity to the claims for

12

money damages asserted against him, based on plaintiff's asserted failure to establish any violation of her Eighth Amendment rights.[1] A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is objectively "sufficiently serious" and (2) the prison official's state of mind is one of "deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 834 (1994). The objective prong is met when the plaintiff shows that she is "incarcerated under conditions posing a substantial risk of serious harm." Id. The subjective prong is met when the plaintiff alleges facts which show that the official knows of and disregards an excessive risk to inmate health or safety. Id. at 837. Most importantly, the Supreme Court has held that the "Eighth Amendment does not outlaw cruel and unusual conditions; it outlaws cruel and unusual punishments." Id. (internal quotations omitted). A prison official's duty under the Eighth Amendment is to ensure reasonable health and safety. Id. at 844. Ultimately, "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal quotations omitted).

---

[1] "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (quotations omitted). The second prong is not contested. Defendant's individual liability thus depends upon whether plaintiff has established a triable issue of any constitutional violation.

Claim 1: Medical Care

Plaintiff claims that inmates do not get sufficient medical attention. (Docket Entry No. 1, p. 5). Courts have held that under the Eighth Amendment, prisoners have a limited constitutional right to medical care. Estelle v. Gamble, 429 U.S. 97, 103 (1976). That right is violated only when prison officials are deliberately indifferent to the prisoner's serious medical needs. Id. at 106.

Here, plaintiff's claim with regards to medical needs focuses on the fact that she was not taken for a follow-up appointment after her surgery. (Docket Entry No. 56-1, pp. 38-40). Plaintiff submitted her request for an appointment, however medical did not schedule her one and therefore she was not seen. (Id. at p. 41). Plaintiff never spoke or wrote to defendant George about her medical request to be seen. (Id.) Plaintiff admits that defendant did not deny her the opportunity to get medical care. (Id. at p. 42). In fact, it is clear that the Jail made efforts to get the medical staff to see plaintiff for her follow-up appointment. (Id. at pp. 41-42). Furthermore, plaintiff states that her surgery site never became infected and her condition never worsened as a result of not being seen by the medical staff. (Id. at p. 43). Plaintiff did receive the surgery she needed and was not harmed by the failure to receive a follow up appointment. Also, defendant George was never aware of any serious medical need of plaintiff's. Therefore, with regards to plaintiff's medical claims, neither the subjective element nor the objective element necessary for making out an Eighth Amendment claim are present.

14

Claim 2: Inadequate Food

Plaintiff complains that her food is watered-down and not to her liking. (Docket Entry No. 1, p. 5). Courts have held that inmates must be provided nutritionally adequate food that has been "prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985) (quoting Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir. 1980)). Inmate complaints about preparation or quality of prison food have generally been held as "far removed from Eighth Amendment concerns." Cunningham v. Jones, 567 F.2d 653, 659-60 (6th Cir. 1977). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). In order to state an Eighth Amendment claim under § 1983, plaintiff must establish both the objective element of a sufficiently serious deprivation and the subjective element that the official acted with deliberate indifference.

Plaintiff's inadequate food claims fail to establish that her Eighth Amendment rights were violated inasmuch as she was never denied food, was never injured by the food, and admits that to her knowledge defendant was not personally involved in the food being watered-down. (Docket Entry No. 56-1, pp. 31-32). Furthermore, plaintiff does not allege facts showing that the food she received was nutritionally inadequate simply because it was watered-down or not to her liking. Therefore, plaintiff fails to establish either element of her Eighth

15

Amendment claim under § 1983 because there was no serious deprivation and defendant was not deliberately indifferent because he did not know of and disregard a risk to plaintiff's health or safety.

## Claim 3: Inadequate and Unsanitary Housing

Plaintiff claims that there is unsanitary black mold on the mats, air vents are rusted over and moldy, showers are leaky, moldy, and clogged up, the pod is infested with spiders and roaches, and uniforms don't get washed daily. (Docket Entry No. 1, p. 5). Regarding such claims concerning an inmate's conditions of confinement, the Supreme Court has held that the Constitution "does not mandate comfortable prisons" and only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation. Wilson v. Seiter, 501 U.S. 294, 298 (1991) (quoting Rhodes v. Chapman, 452 U.S. 337 (1981)). As established in Farmer v. Brennan, the Eighth Amendment only imposes a duty of adequate clothing for the inmate, not necessarily the clothing the inmate might prefer to wear. 511 U.S. at 832. Furthermore, "not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." Ivey v. Wilson, 832 F. 2d 950, 954 (6th Cir. 1987).

Plaintiff asserts that the conditions she identifies are a health threat; however, she admits that she was never actually injured by any of these conditions, just disgusted by them. (Docket Entry No. 56-1, pp. 18-19, 23). Plaintiff, moreover, admits that she never notified defendant George about any of these issues and that to her knowledge,

16

defendant was never in any way personally involved in keeping these conditions unsanitary. (Id. at p. 21). Instead, plaintiff claims defendant is responsible because he was in charge of the Jail. (Id. at pp. 21-22). Plaintiff acknowledges that the Jail ultimately provided "stuff to clean with, our uniforms, and ma[id] stuff," and that the inmates then did the cleaning. (Id.) By failing to make out either element necessary for her § 1983 Eighth Amendment claim, plaintiff's claims concerning unsanitary conditions fail.

Claim 4: Lack of Recreation

Plaintiff claims that inmates are not given adequate time outside. (Docket Entry No. 1, p. 5). Courts have refused to adopt a per se rule that deprivation of outdoor exercise is a violation of the Eighth Amendment and have instead stated only that some form of regular outdoor exercise is important for inmates' well being. Walker v. Mintzes, 771 F.2d 920, 927-28 (6th Cir. 1985). Courts have outlined a number of factors to be considered when determining if the denial of exercise rises to the level of an Eighth Amendment violation. Such factors include physical or psychological injuries resulting from a lack of exercise, whether the size of the jail cell inhibits the ability to exercise, and the justifications for denial of the right to exercise outside the cell, among many others. Rodgers v. Jabe, 43 F.3d 1082, 1086 (6th Cir. 1995) (quoting Patterson v. Mintzes, 717 F.2d 284, 289 (6th Cir. 1983)). As stated in Farmer v. Brennan, the Eighth Amendment imposes duties on officials to "provide humane conditions of confinement" and to "ensure that inmates receive adequate food,

17

clothing, shelter, and medical care." 511 U.S. at 832. Furthermore, the Sixth Circuit has not defined a minimum standard for recreation for adult prisoners. To hold defendant liable, plaintiff must show both that the deprivation is sufficiently serious and that the prison official was deliberately indifferent to the inmate's health or safety in withholding outdoor recreation.

Plaintiff's recreation-based claims fail to establish a sufficiently serious deprivation. Plaintiff claims that she was denied outside recreation time whenever the Jail was "short-staffed, they said it was too hot, too cold, didn't want to mess with it." (Docket Entry No. 56-1 at pp. 25-26). She further alleges that inmates "got to see outside two hours a week." (Id. at p. 26). However, plaintiff states that she was never denied an opportunity to do any type of physical exercise in her pod and in fact, plaintiff did do jumping jacks as a form of recreation. (Id.) She further claims that, "we didn't have no weights or any of that. I mean, we could walk around the pod all we wanted to" though there was not enough "room to do much of anything." (Id. at pp. 25-26). Ultimately, plaintiff states that she was not harmed by the lack of recreation, but was sore from the lack of exercise and it took a while for her eyes to adjust to the sunlight when she did get the chance to go outside. (Id. at pp. 26-27). Plaintiff never sought medical attention for anything related to exercise or lack of recreation and she is not aware that defendant was ever personally involved in keeping her from recreation. (Id. at p. 27). Plaintiff did write one grievance regarding recreation time in

18

which she requested to go out later in the afternoon instead of in the morning. (Id. at p. 28). Lieutenant Wagonschutz received this grievance and responded to plaintiff stating that the Jail would start rotating times so as to get inmates out for recreation at later times in the day. (Id. at pp. 28-29). The facts plaintiff provides do not make out an Eighth Amendment violation because it appears that plaintiff was receiving occasional outdoor recreation, could exercise in her cell, and was furthermore not harmed at all by not receiving additional recreation. (Id. at pp. 25-27). With regards to the second prong, plaintiff has not pleaded facts that demonstrate that defendant George was deliberately indifferent to plaintiff's health or safety.

## Claim 5: Sleeping on the Floor

Plaintiff next claims that she had to sleep on the floor with only one mat for the first four months that she was at the Jail. (Id. at p. 24). However, the Sixth Circuit has previously rejected similar claims. See Jones v. Toombs, 77 F.3d 482, 1996 WL 67750 (6th Cir. 1996); Cook v. Mohr, 897 F.2d 529, 1990 WL 25062 (6th Cir. 1990); Wells v. Jefferson Cty. Sheriff Dep't, 159 F.Supp.2d 1002, 1011 (S.D. Ohio 2001). In Wells, the court held that "having to sleep on a mattress on the floor or being exposed to cold temperatures simply do not rise to the level of a constitutional violation." Id. The Seventh Circuit has held likewise and stated that without allegations that plaintiff was placed in a cold cell in which he had to sleep on the floor for the purpose of punishment, the time spent under these conditions must be viewed as "merely a temporary inconvenience" and as an "inevitable

19

consequence of overcrowding." Summers v. Sheahan, 883 F.Supp.1163, 1169 (N.D. Ill. 1995) (citing Johnson v. Pelker, 891 F.2d 136, 138 (7th Cir. 1989)). In Summers, the inmate was eventually given something to sleep on, and the court noted that "nothing in the Constitution requires elevated beds for prisoners." Summers, 883 F.Supp. at 1169.

Plaintiff's claim of sleeping on the floor with one mat for the first four months that she was at the Jail falls short of stating an Eighth Amendment violation. Firstly, plaintiff was indeed given a mat to sleep on while at the Jail. (Docket Entry No. 56-1, p. 24). Medical staff did not give her a second mat. (Id.) Plaintiff asserts that this was because there were no extra mats for inmates. (Id.) Further, plaintiff never sought any medical treatment from sleeping on the floor. (Id.) Lastly, she admits that defendant George did not do anything personally to keep her from having a second mat and that he was not personally involved in causing plaintiff to sleep on the floor. (Id. at p. 25). The absence of any physical injury, as recognized by the plaintiff in her deposition, supports the finding that no constitutional injury occurred. With regards to the second prong of establishing an Eighth Amendment violation, there is no allegation suggesting "deliberate indifference" to the plaintiff's health. Defendant's motion for summary judgment with respect to this claim should therefore be **GRANTED**.

Claim 6: Lack of Law Library

Next, Plaintiff complains that inmates didn't have access to the law library. (Docket Entry No. 1, p. 5). It is well established that

20

prisoners have a constitutional right of access to the courts. <u>Bounds</u> <u>v. Smith</u>, 430 U.S. 817, 821 (1977). Such a right of access to the courts requires prison officials to ensure that inmates have access to the courts that is "adequate, effective and meaningful." <u>Id.</u> at 822. Furthermore, courts have established that adequate law libraries in prisons are one such method for assuring adequate access to the court. <u>Id.</u> at 832-33. However, courts are ultimately concerned with a right of access to the courts, not necessarily to a prison law library. <u>See</u> <u>Walker v. Mintzes</u>, 771 F.2d 920, 932 (6th Cir. 1985). In order to state a claim for denial of access to the courts, a plaintiff must demonstrate some prejudice or actual injury as a result of the challenged conduct. <u>Lewis v. Casey</u>, 518 U.S. 343, 351 (1996).

Plaintiff's allegations that inmates didn't have access to the law library fall short of establishing a triable claim. Plaintiff recounts that officials told the inmates that they didn't have a law library inmates could go to so instead inmates were brought "two books with all the pages gone." (Docket Entry No. 56-1, p. 23). Plaintiff admits that she was never prevented from having access to the courts or filing cases, just that the process took longer without the books. (<u>Id.</u>) However, plaintiff has not established that the inadequacy of the materials she was provided "caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim," or other such litigation-related detriment required to show prejudice stemming from the purported violation. <u>Pilgrim v. Littlefield</u>, 92 F.3d 413, 416 (6th Cir. 1996) (citing <u>Lewis</u>

21

v. Casey, supra). In sum, plaintiff does not claim here that she was actually impeded in her access to the courts. Therefore, her claim falls short and defendant is entitled to summary judgment on this claim.

## Claim 7: Inadequate Hygiene

Plaintiff also claims that inmates are not supplied adequate amounts of hygiene products. (Docket Entry No. 1, p.5). The Eighth Amendment does prohibit the denial of basic needs, including hygiene, see Estelle v. Gamble, 429 U.S. 97, 104 (1976); however, the plaintiff must show that she suffered extreme discomfort or that she had been completely denied hygiene products. See Argue v. Hofmeyer, 80 F. appx 427, 430 (6th Cir. 2002) (citations omitted). Without such a showing, a plaintiff's claim does not rise to the level of "cruel and unusual punishment." Rhodes v. Chapman established that prisoners are constitutionally entitled to the "minimal civilized measure of life's necessities" established by contemporary standards of decency, "[b]ut conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." Rhodes, 452 U.S. at 347. The Sixth Circuit has held that "temporary inconveniences do not give rise to the Eighth Amendment violations." Dellis v. Corr. Corp. of Am., 257 F. 3d 508, 511 (6th Cir. 2001).

Plaintiff's complaints of a limited number of sanitary napkins for the women and a shortage of toilet paper do not make out a sufficient Eighth Amendment violation. Plaintiff cannot recall if she wrote a grievance about the hygiene products or not. (Docket Entry No.

22

56-1, p. 44). Plaintiff admits that she was never injured as a result of receiving inadequate amounts of hygiene products. (Id.) Furthermore, plaintiff states that the only way defendant George was involved in the lack of hygiene products was pursuant to his oversight of the budget and ordering. (Id. at pp. 44-45). By failing to show extreme discomfort or a complete denial of hygiene products, plaintiff has failed to establish a triable Eighth Amendment claim. As such, the undersigned finds that the defendant is entitled to summary judgment on plaintiff's inadequate hygiene claim.

## Claim 8: Raw Sewage

Next, plaintiff seeks to recover for exposure to raw sewage. (Docket Entry No. 1, p. 5). Specifically, plaintiff states that the "toilets do not flush properly resulting in exposure [to] daily raw [sewage]." (Id.) Plaintiff does not allege any injury from her exposure to the raw sewage nor defendant's involvement in the matter. This court, in agreement with the Eighth Circuit, has held that "exposure to leaking sewage in a prison cell with no accompanying physical harm is insufficient to satisfy the objective component of a constitutional violation." Keel v. Davidson County Sheriff's Office, 2015 WL 799724, at *3 (M.D. Tenn. Feb. 25, 2015) (citing, e.g., Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996)). In addition, the subjective element of "deliberate indifference" to an excessive risk to inmate health or safety must also be met for plaintiff to prevail on her claim. Therefore, "not every overflowed toilet in a prison amounts to a constitutional violation." Smith, 87 F.3d at 268. Without

facts showing a physical harm resulting from the exposure to sewage from toilets and facts showing defendant's deliberate indifference to the matter, plaintiff fails to make out a viable Eighth Amendment claim.

## Claim 9: Sexual Discrimination

Lastly, plaintiff makes claims of sexual [discrimination] while she was incarcerated at the Jail. (Docket Entry No. 1, p. 5). In general, the Equal Protection Clause requires the government to treat similarly situated people alike. See Klinger v. Dep't of Corr., 31 F.3d 727, 731 (8th Cir. 1994). Therefore, "[d]issimilar treatment of dissimilarly situated persons does not violate equal protection." Id. In order to proceed with an equal protection claim, a female plaintiff must establish that she was accorded treatment unequal to that of her male counterparts. Sullivan v. City of Cleveland Heights, 869 F.2d 961, 963 (6th Cir. 1989). In a prison environment specifically, the standard for satisfying the Equal Protection Clause of the Fourteenth Amendment is to assure that sufficient parity has been achieved between male and female inmates. Glover v. Johnson, 35 F. Supp. 2d 1010, 1011 (E.D. Mich), aff'd, 198 F. 3d 557 (6th Cir. 1999). The Equal Protection Clause does not require identical treatment of male and female inmates. Id. at 1021. Additionally, it must be kept in mind that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). Therefore, even if a literal difference in opportunities

offered to male and female inmates were to constitute dissimilar treatment under the Equal Protection Clause, that dissimilar treatment would nevertheless still be permissible if it satisfies the reasonable relation standard articulated in Turner. See Glover, 35 F.Supp.2d at 1021; see also Wolfe v. Alexander, 2014 WL 4897733, at *11 (M.D. Tenn. Sept. 30, 2014) (citing Washington v. Harper, 494 U.S. 210, 223-24 (1990) ("We made quite clear that the standard of review we adopted in Turner applies to all circumstances in which the needs of prison administration implicate constitutional rights.")).

Plaintiff's sexual discrimination claims fail to establish a viable equal protection claim. In her complaint, plaintiff alleges several instances of sexual discrimination including that: men worked less hours to receive their same 2-for-1 privileges, men got the weekends off, and men got all the outside jobs where they got to wear street clothes and could receive food from their families. (Docket Entry No. 56-1, pp. 45-48). The plaintiff asserts that in direct contrast to the men, the women inmates were not afforded these same privileges, but could only work in the kitchen on a 96-hour, 7-day weekly schedule. (Id.) Plaintiff testified that this was because "the Sheriff didn't want the females working outside. He wanted us in the kitchen and kitchen only." (Id. at p. 46). She testified that Sheriff George has "come in the kitchen a couple times, because we had some issues over it, on how come we couldn't work outside or we couldn't wear a T-shirt like the guys," and that "[h]e said that it was too

25

much of a problem for him to keep up with the females if they was working outside [or] anywhere beside the kitchen." (Id.)

In order for plaintiff to succeed on her claim, she must demonstrate that the Jail discriminated against her on the basis of her gender. In support of his position that plaintiff cannot make that showing, defendant submits the affidavit of Debra Wagonschutz, Jail Administrator. (Docket Entry No. 58). The Jail's procedure for assigning jobs first requires that the inmate be sentenced and have no disciplinary, medical, or mental health issues that would prevent him or her from working. (Id. at ¶ 8). This procedure does not include sex as a factor. Once those requirements are met, the inmate is added to the job list after which the Jail Administrator fills any available job from the list. (Id.) The only distinction made throughout the entire job assignment process is between misdemeanor inmates and felony inmates. (Id. at ¶ 10). Felony inmates can be placed in one of three different job assignments: (1) trustee; (2) work bus; or (3) kitchen. (Id. at ¶ 12). As a felony inmate, plaintiff was assigned to work in the kitchen during her time at the Jail[2]. (Id. at ¶ 27). Just like the male felons who also worked inside the Jail as the inside trustees, the kitchen workers were required to wear the Jail uniforms and only had access to the Jail food. (Id. at ¶ 16). In this way, the female felon inmates working inside the Jail are treated equally to the male felon inmates working inside the Jail. From time to time,

---

[2] While it is true that no male inmates worked in the kitchen while plaintiff worked there, male felons have since begun to work in the kitchen at separate times from the female felons. (Docket Entry No. 58, ¶¶ 8, 16).

26

defendant George did allow the outside trustees to wear civilian clothes and to receive food from their families. (Id. at ¶ 13). However, these activities were not guaranteed privileges but occasional allowances. (Id.) These facts clearly demonstrate that outside trustees were not allowed these occasional privileges on account of their gender because other male felons in other job positions did not receive these same occasional benefits.

Furthermore, different jobs require different hours based on the nature of the job; however, all inmates receive the same 2-for-1 benefits where for each day worked they get two days credited toward their sentence. (Id. at ¶ 24). Therefore, it is the nature of the job and not gender that determines the differences in hours worked by inmates.

Lastly, plaintiff claims that the men got all the jobs whereas the women could only work in the kitchen. (Docket Entry No. 56-1, p. 46). However, it is apparent that while plaintiff was at the Jail, female felons had the same number of job opportunities as the male felons because female felons could work as the sewing trustee, female pod trustee, or in the kitchen[3] while male felons could work as inside trustee, outside trustee, or on the work bus. (Docket Entry No. 58, ¶¶ 13-17). While it is true that females did not work on the work bus with the THD, this was not due to the Jail preventing them from this

---

[3] Despite plaintiff's earlier deposition testimony that defendant George would only allow women to work in the kitchen, her failure to respond to the assertion of Ms. Wagonschutz's contrary affidavit testimony in defendant's statement of material facts (Docket Entry No. 57 at ¶ 42) renders the matter undisputed for purposes of summary judgment. Local Rule 56.01(g).

work but due to the fact that the job was highly labor intensive and the Tennessee Highway Department (THD) never expressed an interest in having women on its work crews. (Id. at ¶ 15). Therefore, plaintiff's claim that men got all the jobs is not supported by the undisputed facts.

Here, there is also a strong penological interest of institutional safety and order. In her affidavit, the Jail Administrator, Debra Wagonschutz, states that these concerns were the primary reason for having separate jobs for male and female inmates. (Id. at ¶ 16). Additionally, Tennessee Corrections Institute Code 1400-01.17(2) states that male and female inmates are to be kept completely out of sight, sound, and physical contact with inmates of the opposite sex. (Id.)

Turner necessitates that judicial deference is to be given to jail administrative decision making concerning institutional operations. Glover, 35 F.Supp.2d at 1011. As such, the undersigned finds in this case that plaintiff has failed to show any prejudicial defect in the procedure for determining job placements in the Jail because the Jail did not treat plaintiff differently on the basis of her gender, and there exists a strong penological interest of safety and order in separating male and female inmates. In conclusion, plaintiff's claim of sexual discrimination cannot proceed and summary judgment should be **GRANTED**.

In sum, for the above mentioned reasons, plaintiff has failed to show that the defendant violated her Eighth Amendment right to be free

from "cruel and unusual punishments." Therefore, defendant is entitled to summary judgment on all claims.

Furthermore, plaintiff's claims for injunctive relief are moot because she is no longer confined at the Jail. See Turner v. Safley, 482 U.S. 78, 89-90 (1987). It is undisputed that plaintiff was transported from the Maury County Jail on December 17, 2013 to the Tennessee Department of Corrections where she currently resides. (Docket Entry No. 56-1, pp. 14-16). Accordingly, plaintiff's claims for injunctive relief are moot.

Lastly, to the extent that plaintiff seeks to assert the rights of other inmates, plaintiff lacks standing to bring such claims. See Walton v. Dallman, 1990 WL 146915, *2 (6th Cir. October 3, 1990) (citing Newson v. Norris, 888 F.2d 371, 381-82 (6th Cir. 1989)). Plaintiff has not filed a class action lawsuit pursuant to Rule 23 of the Federal Rules of Civil Procedure. Therefore, the undersigned finds that plaintiff's request for injunctive relief should be **DENIED**.

**RECOMMENDATION**

In light of the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the defendant's motion for summary judgment be **GRANTED**; that the complaint be **DISMISSED WITH PREJUDICE**; and that all other pending motions (Docket Entries 30, 32, and 36) be **TERMINATED AS MOOT**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from receipt of this R&R in which to file any written objections to it with the District Court. Any party

opposing said objections shall have fourteen (14) days from receipt of any objections filed to this R&R in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this R&R can constitute a waiver of further appeal of this R&R. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

**ENTERED** this 19th day of July 2016.

JOHN S. BRYANT
United States Magistrate Judge